**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

**DAVID ENGLAND, BRANDYN HULETT, THOMAS GARMER, ATHENA STUBBS, PRINCETON WELLS, JOHNTHAN JORDAN, STEVEN TANNER, AUSTIN VOORHIES, PHILLIP LaVAUGHN COX, JEFFREY BRYSON, and WILLIAM ANDRICK,**

**Plaintiffs,**

**v.**

**KNOX COUNTY, TENNESSEE and CORY DAUER, Individually and in his capacity as a policymaker for Knox County, Tennessee,**

**Defendants.**

**Case No.:________________**
**JURY DEMANDED**

**COMPLAINT**

Come the Plaintiffs, David England, Brandyn Hulett, Thomas Garmer, Athena Stubbs, Princeton Wells, Johnthan Jordan, Steven Tanner, Austin Voorhies, Phillip LaVaughn Cox, Jeffrey Bryson, and William Andrick, by and through counsel, and sues the Defendants Knox County, Tennessee and Cory Dauer pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages against Defendant Dauer, individually and in his capacity as a policymaker for Defendant Knox County, Tennessee, in an amount to be proven at trial, plus the costs of this cause, and reasonable attorney fees and costs in accordance with 42 U.S.C. § 1988, and for their causes of action, claim and allege as follows:

1. Plaintiff David England (hereinafter referred to as "Plaintiff England") is a citizen and resident of Knox County, Tennessee.

2. Plaintiff Brandyn Hulett (hereinafter referred to as "Plaintiff Hulett") is a citizen and resident of Knox County, Tennessee.

3. Plaintiff Thomas Garmer (hereinafter referred to as "Plaintiff Garmer") is a citizen and resident of Knox County, Tennessee.

4. Plaintiff Athena Stubbs (hereinafter referred to as "Plaintiff Stubbs") is a citizen and resident of Knox County, Tennessee.

5. Plaintiff Princeton Wells (hereinafter referred to as "Plaintiff Wells") is a citizen and resident of Knox County, Tennessee.

6. Plaintiff Johnthan Jordan (hereinafter referred to as "Plaintiff Jordan") is a citizen and resident of Knox County, Tennessee.

7. Plaintiff Steven Tanner (hereinafter referred to as "Plaintiff Tanner") is a citizen and resident of Knox County, Tennessee.

8. Plaintiff Austin Voorhies (hereinafter referred to as "Plaintiff Voorhies") is a citizen and resident of Knox County, Tennessee.

9. Plaintiff Phillip LaVaughn Cox (hereinafter referred to as "Plaintiff Cox") is a citizen and resident of Knox County, Tennessee.

10. Plaintiff Jeffrey Bryson (hereinafter referred to as "Plaintiff Bryson") is a citizen and resident of Knox County, Tennessee.

11. Plaintiff William Andrick (hereinafter referred to as "Plaintiff Andrick") is a citizen and resident of Knox County, Tennessee.

12. Defendant Knox County, Tennessee (hereinafter referred to as "Defendant Knox County, Tennessee") is a county organized and existing under the laws of the State of Tennessee.

13. Defendant Cory Dauer (hereinafter referred to as "Defendant Dauer") is currently employed as a Chief at the Richard L. Bean Juvenile Detention Center. He is sued individually and in his official capacity as the Chief of the Richard L. Bean Juvenile Detention Center. At all times material herein, Defendant Dauer acted under color of law, and as a final policymaker for Knox County, Tennessee, in his role as the Chief of the Richard L. Bean Juvenile Detention Center. (The undersigned understand that Defendants refer to the Juvenile Detention Center as the "East Tennessee Juvenile Service Center" despite the fact that Mr. Bean's name is on the outside of the building. In any event, no matter what it is called, it is one and the same).

14. This Court has jurisdiction to hear Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

15. This Court has jurisdiction to hear Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is appropriate in this Court in accordance with 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claims which are the subject matter of this action occurred in this judicial district.

17. The Plaintiffs are all current or former employees of the Defendant Knox County, Tennessee and assigned as corrections officers to Defendant's Juvenile Detention Center. Defendant Dauer is the Center's commander, Plaintiffs' current or former supervisor, and responsible for the development of all policies and procedures at the Juvenile Detention Center and its maintenance and operations.

18. Each of the Plaintiffs have common causes of action, but certain Plaintiffs, or group of Plaintiffs, have distinct causes of action but all arise from a common set of facts, and arise out of the same transaction, occurrence or series of transactions or occurrences and therefore able to

be joined in one action pursuant to Federal Rule of Civil Procedure 20. A motion has accompanied the filing of the Complaint. All claims alleged by the Plaintiffs fall within the subject matter jurisdiction of the Court.

**CAUSES OF ACTION**
**COUNT I**
**SUBSTANTIVE DUE PROCESS**
**DAVID ENGLAND, BRANDYN HULETT, THOMAS GARMER, ATHENA STUBBS, PRINCETON WELLS, JOHNTHAN JORDAN, STEVEN TANNER, AUSTIN VOORHIES, PHILLIP LAVAUGHN COX, JFFREY BRYSON, AND WILLIAM ANDRICK**

19. Plaintiffs allege that the Defendants have violated Plaintiffs' clearly-established substantive due process rights secured by the Fourteenth Amendment to the United States Constitution, and is therefore liable pursuant to 42 U.S.C. § 1983. Plaintiffs allege that none of the corrections officers assigned to the Center have been adequately trained in the housing custody or control of inmate/detainees since the departure of Richard Bean from the position of Superintendent of the Juvenile Detention Center of Knox County, Tennessee. Plaintiffs allege that in or around July-August 2025, four (4) to five (5) employees of the Juvenile Detention Center, including Defendant Dauer, attended sessions at the Knox County Sheriff's Department concerning the housing of adult inmates but none of the sessions addressed the housing custody and/or control of juveniles. In fact, Plaintiffs have been told by Defendant Dauer that the sessions at the Sheriff's Department were inapplicable to their positions at the Juvenile Detention Center and were not to be followed. Instead, Defendant Dauer actually appropriated a set of policies and procedures from another juvenile facility and not geared at all to address the unique issues that may be present at the Knox County, Tennessee Juvenile Detention Center. Yet, even if same are applicable, Plaintiffs allege that employees assigned to the Juvenile Detention Center are not actually trained on any of the policies but rather are just provided a handbook to read or read the

policies. Indeed, there is no training on the appropriated policies on the handling of issues presented by the juvenile detainees. Further, Plaintiffs are not issued and do not possess standard safety equipment and/or protective gear needed to reasonably perform the duties and responsibilities of corrections officers interacting with juveniles in the Juvenile Detention Center.

20. The result is that the employees at the Juvenile Detention Center are not adequately trained in the operation of the Juvenile Detention Center of Knox County, Tennessee. Thus, the work environment for employees is unsafe. As stated, the employees, including Plaintiffs who interact with the detainees are not only not adequately trained in the proper custody and control of detainees, they also lack basic equipment and/or protective gear to ensure their safety and the safety of the detainees. The consequence of the outlined deficiencies has been actual physical injuries, and the inevitability of other physical injuries. Plaintiff Jeffrey Bryson, for instance, has already endured 3-to-4 physical assaults in his interaction with detainees at the Juvenile Detention Center as a direct result of the Defendants' failure to adequately train any employee in the interaction of juvenile detainees at the Center. All other Plaintiffs have, at the very least, ongoing mental distress and have sustained emotional harm as a direct result of the vulnerability Plaintiffs endure due to the deliberate indifference of Defendant Knox County, Tennessee and Defendant Dauer. Defendants have created a danger for the Plaintiffs and detainees or, at the very least, enhanced the danger for the Plaintiffs and detainees by creating an unsafe working environment in violation of Plaintiffs' clearly-established Fourteenth Amendment right to substantive due process. Accordingly, all Plaintiffs are entitled to compensatory damages in an amount to be proven at trial.

21. Plaintiffs also request that the Court declare the inadequate training and absence of basic safety equipment and/or protective gear to violate the clearly-established federal constitutional rights of Plaintiffs, and others. As such, Plaintiffs request the Court enter an



Case 3:26-cv-00255 Document 1 Filed 05/28/26 Page 5 of 19 PageID #: 5

injunction compelling Defendants to enact a constitutional training regimen geared to the interaction with juveniles and properly equip Plaintiffs and all other staff members at the Juvenile Detention Center with appropriate equipment and protective gear in accordance with federal law.

**COUNT II.**
**PLAINTIFFS' JOHNTHAN JORDAN, DAVID ENGLAND, AND STEVEN TANNER**

22. Plaintiffs Johnthan Jordan, David England, and Steven Tanner allege that both Defendants deprived them of their clearly-established First and Fourteenth Amendment rights secured by the U.S. Constitution to be free of political retaliation, or sustain any adverse employment action as a result of Plaintiffs' association with Richard L. Bean. These Plaintiffs were hired by the previous superintendent, Richard Bean. Defendant Dauer has openly stated to multiple individuals at the Juvenile Detention Center that it is his goal to either terminate or force the retirement or resignation of any person either hired by or employed in the Bean Administration.

23. Defendants are liable to Plaintiff Johnthan Jordan for the violation of his clearly-established First and Fourteenth Amendment rights secured by the United States Constitution to be free of political retaliation. This Plaintiff was hired July 1, 2024. Starting with the appointment of Brian Bivins as interim Superintendent, and increasing significantly after Brian Bivins' November 10, 2025 resignation and the appointment of Defendant Dauer as Captain, and most recently, as Chief of the Juvenile Detention Center, this Plaintiff has undergone significant changes in his employment status as a result of his hiring by Richard Bean at the Juvenile Detention Center in the violation of his clearly-established First and Fourteenth Amendment rights. Defendants have severely, consistently, and unjustly harassed this Plaintiff over his work performance as a corrections officer on second shift. Multiple unwarranted criticisms and nitpicking has occurred by Defendant Dauer in order to "build a record" in order to pretextually terminate Plaintiff

Johnthan Jordan. Defendants have made no effort to adequately train any of the Plaintiffs, or others, hired to serve as corrections officers at the Juvenile Detention Center in the appropriate and/or constitutional manner of the custody and control of juvenile detainees. All Defendants have done is appropriate a set of policies and procedures, some applicable, some not applicable to the Juvenile Detention Center operated by Knox County, Tennessee. Even if all were applicable, no effort has been undertaken by Defendants to adequately train any person on any of the policies, and accordingly, many of the same are subject to the arbitrary interpretation of Defendant Dauer, and his selective enforcement. The result is multiple instances of unwarranted harassment, criticism, nitpicking, and writeups all designed to eliminate Plaintiffs' position, and/or force Plaintiff to resign. Accordingly, Defendants are liable to Plaintiff Jordan for compensatory damages.

24. Defendants are liable to Plaintiff England pursuant to 42 U.S.C. § 1983 for the violation of his clearly-established First and Fourteenth Amendment rights secured by the United States Constitution to be free of political retaliation. This Plaintiff was hired January 31, 2025. As with Plaintiff Jordan, this Plaintiff has been severely unjustly and consistently harassed by Defendants in the performance of his position as corrections officer. Again, Defendant Dauer appropriated certain policies and procedures from another juvenile detention facility which are not geared toward Juvenile Detention Center of Knox County, Tennessee. No employee of the Detention Center has received adequate training on the policies leaving their interpretation up to Defendant Dauer as well as the discretion to selectively enforce the policies. As such, this Plaintiff has been repeatedly informed, without evidence, that he has violated Defendant's policy in the performance of his position, the filling out of facility forms, and the selective applicability of leave. This Plaintiff has been repeatedly harassed by Defendants and those under the influence of

Defendants for his appearance. Namely, Defendant Dauer and his underlings, have heavily criticized Plaintiff's beard and deemed it inconsistent with his role as corrections officer. This is despite the fact that Plaintiff has repeatedly informed both Defendant Dauer and anyone professing to criticize his appearance that the beard is a symbol of his religious beliefs. Additionally, Defendant Dauer has unreasonably refused this Plaintiff any accommodation to manage his diabetes and neuropathy safely. That simply includes the presence of certain medical supplies, and permission to eat or drink snacks or take short breaks to manage and control his diabetes and neuropathy. Additionally, this Plaintiff has requested he be allowed to wear supportive, cushioned shoes while performing his duties as a corrections officer. All accommodations, though reasonable, have been denied unreasonably by Defendants. Plaintiff avers that the denial of the accommodations requested, as well as the aforementioned treatment inflicted upon him by Defendants, without reason, evinces Defendants' intent to either build a record and terminate him or, force his resignation in violation of his clearly-established First and Fourteenth Amendment rights. Accordingly, Plaintiff England is entitled to an award of compensatory damages.

25. Defendants are also liable pursuant to 42 U.S.C. § 1983 to Plaintiff Steven Tanner for the violation of his clearly-established First and Fourteenth Amendment rights secured by the United States Constitution against political retaliation. This Plaintiff was hired February 3, 2025. Defendants terminated this Plaintiff shortly after assuming control over the Juvenile Detention Center. This Plaintiff was repeatedly criticized and admonished by Defendants for alleged deficiencies and work performance. Yet, Plaintiff denies any deficiencies and avers that his performance was more than satisfactory, and exceeded the expectations of anyone reasonably supervising a corrections officer. As stated previously, however, Defendants had failed to adequately train anyone on any of their alleged policies and/or expectations and therefore,

Defendants could selectively and subjectively determine which individual had complied with policy, and those who did not. This Plaintiff was repeatedly and wrongfully accused of causing staffing issues as a result of his periodic need to be at home to address serious sickness within his immediate family, or switch shifts or hours with another willing employee. Plaintiff avers that any request was in total compliance with the personnel policies of other departments of the county Defendant Knox County, Tennessee, and the Family Medical Leave Act ("FMLA"). Yet, this Plaintiff was terminated anyway. This Plaintiff avers that no reason existed for discipline much less termination and therefore he avers that he was terminated in violation of his clearly-established First and Fourteenth Amendment rights to be free of retaliation. No dispute exists that Plaintiff was hired under the administration of Richard Bean, Defendant Dauer has professed multiple occasions to either terminate or force the resignation or retirement of those hired under Mr. Bean, and this Plaintiff clearly fit within that category of those targeted for separation of employment. Accordingly, Plaintiff Tanner is entitled to an award of compensatory damages.

**COUNT III**
**BRANDYN HULETT**

26. Defendants are liable to Plaintiff Brandyn Hulett under 42 U.S.C. § 1983 for the violation of his clearly-established First and Fourteenth Amendment rights of the United States Constitution to be free from retaliations/disparate treatment as a result of familial association. Plaintiff Hulett is the son of Captain Twila Hulett who was hired by Brian Bivins after taking over as the interim Superintendent of the Juvenile Detention Center from Richard Bean, and then discharged by interim Commissioner Brian Bivins who also hired Defendant Dauer. No reason existed to fire Captain Hulett and the same is the subject of a discrimination charge which Captain Hulett has filed with the Equal Employment Opportunity Commission ("EEOC").

27. Brandyn Hulett is Captain Hulett's biological son and this is known to both Defendants. As such, Plaintiff Hulett had a clearly-established First and Fourteenth Amendment right not to be retaliated against or treated disparately as a result of this relationship. Despite that, Plaintiff Hulett was repeatedly subject to adverse working conditions by Defendant Dauer from August 2025 until the present date, including physical abuse, name calling, manipulation of duties, manipulation of schedule, manipulation of time worked, multiple threats to Plaintiff Hulett's person, multiple threats to Plaintiff Hulett's position and multiple other actions meant to dissuade Plaintiff Hulett from exercising his own independent judgment and sound reasoning and/or providing his mother, or any member of his mother's legal team, with information, no matter how benign, concerning either Defendants or the operation of the Juvenile Detention Center.

28. Plaintiff Hulett avers that as a direct result of Defendants' violation of his clearly-established First and Fourteenth Amendment rights to familial association, he has sustained physical and emotional pain and suffering, humiliation, embarrassment, and convenience, and loss of enjoyment of life. Accordingly, Plaintiff Hulett is entitled to compensatory damages.

## COUNT IV
## PHILLIP LAVAUGHN COX, WILLIAM ANDRICK, PRINCETON WELLS AND THOMAS GARMER

### Phillip LaVaughn Cox

29. Defendants are liable to Plaintiff Phillip LaVaughn Cox (hereinafter "Plaintiff Cox") pursuant to 42 U.S.C. § 1983 and state law for violation of his First and Fourteenth Amendment right secured by the United States Constitution and Tenn. Code Ann. § 50-1-304. Plaintiff Cox was hired February 23, 2026, as a corrections officer. Plaintiff Cox witnessed another corrections officer, Tanika Thompson, and correction officer Mims utilize excessive force against a detainee, photographed the detainee to document the injuries sustained, and submitted an incident

report. Corrections officer Thompson, however, is a sibling of Lieutenant Deztany Bishop, at the Juvenile Detention Center, and the same is well-known to Defendants. Lieutenant Bishop has a positive relationship with Defendant Dauer, and has influenced all personnel decisions concerning the Plaintiffs, and others, which concern any aspect of the employment with her sister Tanika Thompson. Upon the submission of the incident report, Defendant Dauer immediately terminated Plaintiff Cox. Defendant Dauer also caused a separation notice to be issued falsely stating the reason for Plaintiff Cox's termination as violation of policy and further slandered Plaintiff Cox by stating in the separation notice that Plaintiff Cox was "taking pictures of detainees" falsely again painting Plaintiff Cox in an unfair professional light. The so-called "policy" violations Defendant Dauer referred to in his termination of Plaintiff Cox was pretext for the true reason, which was Plaintiff Cox's documentation of the egregious nature of the conduct of corrections officer Thompson against the 14-year-old juvenile detainee. Plaintiff Cox avers that his termination therefore was motivated by his whistleblower action concerning correction officer Thompson and constitutes a violation of his clearly-established First and Fourteenth Amendment rights to the United States Constitution.

30. Plaintiff Cox's termination also violates Tenn. Code Ann. § 50-1-304. Plaintiff Cox was terminated for refusing to remain silent about "illegal activities." Namely, the force utilized by corrections officer Thompson against the 14-year-old juvenile detainee was totally illegal. The illegal activities could have easily constituted the criminal acts of assault, aggravated assault, official misconduct, official oppression, etc. as a criminal civil rights violation as outlined in 18 U.S.C. § 242, the illegality of activities also contravene civil law, including acts of negligence, assault and battery, false imprisonment, etc. and as a clear violation of 42 U.S.C. § 1983. No other reason existed to terminate Plaintiff Cox, and Plaintiff Cox's documentation of the egregious

incident was never forwarded to the Department of Children's Services ("DCS") who had custody of the detainee, or any other agency. As such, Defendants violated Tenn. Code Ann. § 50-1-304 by terminating Plaintiff Cox. Accordingly, Plaintiff Cox is entitled to compensatory damages.

**William Andrick**

31. Defendants are liable to Plaintiff William Andrick (hereinafter "Plaintiff Andrick") under 42 U.S.C. § 1983, for the violation of his clearly-established First and Fourteenth Amendment rights against retaliation. Plaintiff Andrick was hired November 3, 2025, by interim Superintendent Brian Bivins and was initially assigned to work the second shift. Brian Bivins, however, resigned a week later but Plaintiff Andrick remained employed at the Juvenile Detention Center under the direct supervision of Defendant Dauer. Plaintiff Andrick had previous juvenile correctional experience in the State of Indiana, as well as experience as a reserve police officer in the State of Indiana. As such, Plaintiff Andrick was immediately made a corporal with supervisory responsibilities of unranked corrections officers.

32. Plaintiff Andrick was moved to third shift and began the supervision of the corrections officers on his shift. In or around late April or early May 2026, Defendants approached Plaintiff Andrick and informed him that Tanika Thompson desired to be placed on third shift. Plaintiff Andrick knew Ms. Thompson had been accused of exercising constitutional force on detainees, and engaging in other multiple acts of unprofessional conduct. Plaintiff Andrick displayed hesitation to Defendant Dauer as a result of the corrections officer's record, and Plaintiff Andrick's concern that he would now be responsible for her supervision. As a result, Defendants terminated Plaintiff Andrick May 7, 2026, falsely accusing him of failing to follow intake protocol. Specifically, Plaintiff Andrick was falsely accused of releasing a detainee despite the detainee having an active court-ordered hold. Plaintiff Andrick avers that the reasons provided by

Defendants support his termination are false, and pretext for Plaintiff Andrick's expression of concern in supervising Ms. Thompson. As such, Defendants' May 7, 2026, termination of Plaintiff Andrick violated Plaintiff Andrick's clearly-established First and Fourteenth Amendment rights of retaliation. Accordingly, Plaintiff Andrick is entitled to compensatory damages.

**Princeton Wells**

33. Defendants are liable to Plaintiff Princeton Wells (hereinafter "Plaintiff Wells"), pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff Wells' clearly-established First and Fourteenth Amendment right secured by the United States Constitution. Plaintiff Wells was hired as a corrections officer October 6, 2025. At all times, Plaintiff Wells performed well, and met or exceeded all reasonable expectations. In fact, Defendants made Plaintiff Wells the officer in charge of the second shift, and specifically requested that he work in the intake area and ensure that others perform in the intake area as expected. Yet, Defendants also consistently and pervasively harassed Plaintiff Wells about his style of hair. Defendants also instructed him not to assist other officers hired during the Bean administration, and to stay away from certain officers. Plaintiff Wells witnessed Defendants target other employees hired previously for termination and forced retirement or separation. Later, Defendant Dauer through Sergeant Sabol, approached Plaintiff Wells and demanded that he assume responsibility for training Ms. Thompson so she could also perform the intake function. Again, like Andrick, Plaintiff Wells was reticent and Defendant Dauer again through Sergeant Sabol, cited Plaintiff Wells for allegedly failing to follow instructions and also intentionally miscalculated this Plaintiff's attendance record to support Defendant Dauer's decision to discipline him. Of course, no reason existed to discipline Plaintiff Wells. At all times Plaintiff Wells acted appropriately and performed well. Ms. Thompson had allegedly committed multiple violations of the civil and criminal code and candidly should not have been employed as

a corrections officer or in any capacity at the Juvenile Detention Center as a direct result of her alleged record. Nevertheless, Defendant Dauer continued to push Ms. Thompson to have additional responsibility and/or advance despite his knowledge of subject officer's alleged record. As such, and due solely to his concern about the subject officer's presence in the intake area of the Juvenile Detention Center, as well as his responsibility in ensuring that all detainees were treated constitutionally as they went through the intake process, Plaintiff Wells expressed his concerns to Defendant Dauer. As a direct result, Plaintiff Wells was terminated by Defendants in violation of his clearly-established First and Fourteenth Amendment right of retaliation with the United States Constitution. Accordingly, Plaintiff Wells is entitled to compensatory damages.

**COUNT V**
**THOMAS GARMER, ATHENA STUBBS**
**AUSTIN VOORHIES AND JEFFREY BRYSON**

**Thomas Garmer**

34. Defendants are liable to Plaintiff Thomas Garmer (hereinafter "Plaintiff Garmer") pursuant to 42 U.S.C. § 1983 for the violation of his clearly-established First and Fourteenth Amendment rights secured by the United States Constitution. Plaintiff Garmer was hired February 4, 2026, and became a corporal on the second shift overseeing the corrections officers already working the shift. As a corporal, Plaintiff Garmer reported directly to Sergeant Brad Sabol, Lieutenant Deztany Bishop, and Defendant Dauer. Plaintiff Garmer is still employed at the Juvenile Detention Center but as a corrections officer as Defendants' unconstitutionally demoted Plaintiff Garmer May 11, 2026, as a direct result of his reporting of unprofessional behavior of Tanika Thompson. This Plaintiff has also reported multiple other instances of detainee mistreatment by Thompson and other officers but all have been ignored by Defendants.

35. From the inception of his employment at the Juvenile Detention Center, Plaintiff Garmer has been concerned with the alleged unprofessional conduct of corrections officer Thompson. After several incidents, Plaintiff Garmer reported his concerns to his direct supervisor, Brad Sabol, and Brad Sabol's direct supervisor, Lieutenant Bishop. No action was taken and Plaintiff Garmer's attempt to supervise Tanika Thompson as he did the other officers on his shift, was rebuffed not only by Thompson, but Sergeant Sabol, Lieutenant Bishop and Defendants. Moreover, as a direct result of his reporting of misconduct, Plaintiff Garmer began to receive unwarranted discipline from Defendants, and was referred to as a racist. Plaintiff Garmer is not a racist or at all times performed well and even-handedly concerning his interactions with other employees and detainees.

36. As a result, Defendant Dauer demoted Plaintiff Garmer from corporal to corrections officer together with the inevitable loss of pay and benefits Plaintiff Garmer enjoyed with the rank of corporal. Plaintiff Garmer also sustained mental pain and suffering, emotional distress, humiliation, and embarrassment as a result of his futile attempts to reasonably supervise Tanika Thompson, the discipline he received from Defendants, and being unjustly referred to as a racist. Accordingly, Plaintiff Garmer is entitled to compensatory damages.

**Athena Stubbs**

37. Defendants are liable to Plaintiff Athena Stubbs (hereinafter "Plaintiff Stubbs") pursuant to 42 U.S.C. § 1983 for the violation of her clearly-established First and Fourteenth Amendment rights to the United States Constitution. Plaintiff Stubbs became employed as a corrections officer in February 2026, and assigned to the second shift. Along with Plaintiff Cox, Plaintiff Stubbs witnessed the results of corrections officer Thompson and Mims' assault on a 14-year-old detainee which caused the detainee injury. She provided certain information for the

written report Plaintiff Cox submitted concerning the incident. Plaintiff Stubbs also reported both corrections officer Thompson, corrections officer Mims, and corrections officer Davis for several instances, one in written form, of encouraging detainees to physically assault her. Defendants took no action to stop or alleviate the aforementioned conduct which was a direct threat to Plaintiff Stubbs' safety, although known to the Defendants. Plaintiff Stubbs contends that Defendants' inaction is in retaliation for confirmation in the incident which was the subject of Plaintiff Cox's written report, and her multiple instances of reporting to her supervision about the mistreatment of detainees.

38. Moreover, throughout her employment, Plaintiff Stubbs has been subjected to severe and pervasive harassment by corrections officer Thompson, corrections officer Mims, and corrections officer Davis on a daily basis as Plaintiff Stubbs attempted to conduct herself professionally and consistent with the rights of the detainees at the Center, rather than blindly align herself with Defendants and their conduct. Defendants have allowed Plaintiff Stubbs to endure a hostile work environment on a daily basis for reporting instances of detainee abuse and mistreatment in violation of her clearly-established First and Fourteenth Amendment rights. As a direct result of Defendants' unconstitutional conduct, Plaintiff Stubbs has endured physical and mental pain and suffering, embarrassment and humiliation, distress, and other compensatory damages.

**Austin Voorhies**

39. Defendants are liable to Plaintiff Austin Voorhies (hereinafter "Plaintiff Voorhies") pursuant to 42 U.S.C. § 1983 for the violation of his clearly-established First and Fourteenth Amendment rights to be free of retaliation. Plaintiff Voorhies was hired as a corrections officer assigned to the Juvenile Detention Center August 4, 2025, by Brian Bivins. As stated, Brian Bivins

resigned November 10, 2025, as interim Superintendent, and Defendant Dauer took over the management of the facility first as Captain and then as Chief. Plaintiff Voorhies remained employed, but as detailed, problems at the Juvenile Detention Center continued. The lack of adequate training to Plaintiff Voorhies, and others, has been detailed in Count I of the Complaint. Plaintiff Voorhies, and others, have reported multiple instances of detainee abuse and unprofessional conduct by corrections officers Thompson and Mims. All instances have gone unaddressed, and Plaintiff Voorhies' ability to perform as expected as a corrections officer has been compromised by the Defendants not only because of the lack of adequate training, but also his performance and adherence to reasonable standards concerning his interaction with judicial detainees has been unduly criticized and scrutinized by Defendants as a direct result of his reporting of Corrections Officer Thompson.

40. In fact, Defendants have subjected Plaintiff Voorhies to a hostile work environment and retaliated against him for his reporting of incidents involving corrections officer Thompson. Defendants have severely harassed Plaintiff Voorhies on a daily basis, unjustly criticize his job performance, labeled him as against the administration, and adverse to the proper functioning of the juvenile justice system in violation of the First and Fourteenth Amendment to the United States Constitution. As a direct cause of Defendants' unconstitutional conduct, Plaintiff Voorhies submits that he has sustained mental pain and suffering, embarrassment, humiliation, has been stymied for advancement, and sustained other compensatory damages as a result of the violation of his clearly-established federal constitutional rights.

**Jeffrey Bryson**

41. Defendants are liable to Plaintiff Jeffrey Bryson (hereinafter "Plaintiff Bryson") pursuant to 42 U.S.C. § 1983 for the violation of his clearly-established First and Fourteenth

Amendment rights to be free of retaliation. Plaintiff Bryson was hired as a corrections officer assigned to the Juvenile Detention Center March 9, 2026. The lack of adequate training to Plaintiff Bryson, and others, has been detailed in Count I of the Complaint. Plaintiff Bryson, and others, have reported multiple instances of detainee abuse and unprofessional conduct by corrections officers Thompson and Mims. All instances have gone unaddressed, and Plaintiff Bryson's ability to perform as expected as a corrections officer has been compromised by the Defendants not only because of the lack of adequate training, but also his performance and adherence to reasonable standards concerning his interaction with judicial detainees is unduly criticized and scrutinized as a direct result of his reporting of corrections officer Thompson.

42. In fact, Defendants have subjected Plaintiff Bryson to a hostile work environment and retaliated against him for his reporting of incidents involving corrections officer Thompson. Defendants have severely harassed Plaintiff Bryson on a daily basis, unjustly criticize his job performance, and labeled him as against the administration. Defendants' harassment of Plaintiff Bryson has included Defendants thwarting and delaying of Plaintiff Bryson's ability to receive legitimate workers' compensation benefits for an injury he sustained that undisputably occurred on the job and therefore, compensable. Accordingly, Plaintiff Bryson is entitled to compensatory damages, as a result of Defendants' unconstitutional conduct.

43. Plaintiffs aver that all Plaintiffs are entitled to an award of punitive damages to the extent any of the acts alleged herein are deemed to have occurred in Defendant Dauer's individual capacity. As such, Plaintiffs allege Defendant Dauer acted maliciously, callously, and in reckless disregard for Plaintiffs' clearly established federal constitutional rights justifying an award of punitive damages.



Case 3:26-cv-00255 Document 1 Filed 05/28/26 Page 18 of 19 PageID #: 18

WHEREFORE, Plaintiffs, David England, Brandyn Hulett, Thomas Garmer, Athena Stubbs, Princeton Wells, Johnthan Jordan, Steven Tanner, Austin Voorhies, Phillip LaVaughn Cox, Jeffrey Bryson, and William Andrick, respectfully demand judgment against Defendants Knox County, Tennessee and Defendant Cory Dauer for compensatory damages in an amount to be proven at trial, punitive damages against Defendant Cory Dauer only in his individual capacity in an amount to be proven at trial, the costs of this cause, discretionary and otherwise, and attorney fees and costs pursuant to 42 U.S.C. § 1988. Plaintiffs further request the Court to declare that Defendants have violated the federal constitutional rights of the Plaintiffs, and others, through the inadequate training of Plaintiffs, and others, and request the Court issue an injunction compelling Defendants to implement a training regimen for all staff at the Juvenile Detention Center of Knox County, Tennessee, in full compliance with the constitutional rights of Plaintiffs, other staff members, and detainees.

Respectfully submitted this 28th day of May, 2026.

**LAW OFFICE OF ARTHUR F. KNIGHT, III**

*/s/Arthur F. Knight, III*
Arthur F. Knight, III, BPR #016178
3248 Tazewell Pike, Suite 103
Knoxville, Tennessee 37918
Phone: 865-252-0430
art@artknightlaw.com

*Attorney for Plaintiffs*